PASSAIC COUNTY COURT OF COMMON PLEAS.

BOARD OF PHARMACY OF THE STATE OF NEW JERSEY, PLAINTIFF, v. QUACKENBUSH AND COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT.

Decided October 23, 1940.

DAVIDSON, C. P. J.  Defendant, corporate operator of a department store, is charged by the State Board of Pharmacy with violation of section 45:14-6 of the Revised Statutes; *N. J. S. A.* 45:14-6, in that it permitted the retailing and

dispensing of a drug or medicine known as "Vitamins Plus" by a person neither a registered pharmacist or registered assistant nor under the immediate supervision of a registered pharmacist.

An alternative defense, unusual, but to some extent, at least, justified by the proofs, is interposed. Defendant's first contention is that "Vitamins Plus" is a food product; its second, that in the event the proofs determine "Vitamins Plus" to be a medicine, it is in fact a non-poisonous patent or proprietary medicine, and as such, specifically excepted under the provisions of section 45:14–29; *N. J. S. A.* 45:14–29.

"Vitamins Plus" is a product comprising two types of gelatin capsules, the name is registered in the United States Patent Office, a disclaimer, however, having been executed as to the word "vitamin," and the article is dispensed in a sealed, cellophane-wrapped package, plainly marked with the name, content description and directions for use. The retailer merely hands over the original sealed package and there is no reliance on the part of the purchaser upon the skill or knowledge of the dispenser.

While the witnesses produced at the trial were qualified experts with imposing records of individual achievement, there was little divergence in the factual testimony. The statute does not specifically define either "drug" or "medicine," and the definition cited by the witnesses substantially appears to be that contained in the Federal Food Act, 21 *U. S. C. A.* 21:321, namely the term "drug" means "articles recognized in the official United States Pharmacopoeia," and the term "medicine" means "articles intended for use in the diagnosis, cure, medication, treatment, or prevention of disease in man or other animals." These definitions apply to the Federal Act, which was adopted for different and other purposes than those moving the New Jersey statute, and cannot, in my opinion, govern the construction of the state legislation. It is common knowledge that certain foods are prescribed in the dietary treatment of disease, and while the article thus falls within the broad limit of the definition, I cannot conceive that it thus is transformed into a medicine *ipso facto.* Nor can I agree that a substance becomes a

medicine as a fact merely because of the form, in this case, capsules, in which it is marketed.

Vitamins, as such, are not listed in the Pharmacopoeia; they are elements contained in ordinary foods and are constituents of food products—apparently the fact that they are concentrated does not change their essential character, and the theory of the defendant—it may well be nothing more than a theory—is that the concentrated product marketed by them supplies whatever deficiency may be occasioned by improper or insufficient diet, particularly as to certain food elements.

It is conceded in the evidence that "Vitamins Plus" capsules are harmless and can have no ill effect. The legislative purpose of the New Jersey statute as was said in *Board of Pharmacy* v. *Braunstein, 2 N. J. Mis. R.* 454, was "manifestly to protect the public from the dangers attendant upon the sale of poisons and powerful drugs to the public without the protection afforded by the skill and qualification necessary to safeguard the public use."

The only recent case dealing with the problem here presented appears to be that of *Kroger Grocery and Baking Co.* v. *The Board of Pharmacy of the State of Indiana,* decided November 6th, 1939, wherein it was held that vitamin capsules are accessory food factors and as such exempted from the operation of the Indiana State Drug Act.

My conclusion is that "Vitamins Plus" whether called an accessory food factor or a dietary supplement *is still* essentially a food product and the complaint, therefore, should be dismissed.